## LEEDS AND CATLIN COMPANY *v.* VICTOR TALKING MACHINE COMPANY.

### CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE SECOND CIRCUIT.

No. 80. Argued January 15, 18, 1909.—Decided April 19, 1909.

Where grave questions of fact are presented by the proof on which a preliminary injunction has been granted in a patent case, this court will not go beyond the action of the lower court and decide those questions and the case on the merits.

A combination which produces by the coöperation of its constituents the result specified in the manner specified is a true mechanical device and a valid combination.

A patent may embrace more than one invention, *Steinmetz* v. *Allen*, 192 U. S. 543, and it may embrace a process and the apparatus by which it is performed.

Where dependent and related inventions are patented separately a foreign patent for either does not affect the other under § 4887, Rev. Stat., and the same rule applies if such inventions are embraced in one patent.

While a combination is a union of elements which may be partly new, or wholly old or wholly new, the combination is a means distinct from its constituent elements, any of which, if new and patentable, may be covered by separate claims in the same patent as the combination.

Separate claims in the same patent are independent inventions, and the infringement of one is not the infringement of the others, and the redress of the patentee is limited by the injury he suffers; nor is the validity and duration of valid claims affected by the invalidity or expiration of any other claim. *Siemens* v. *Sellers*, 123 U. S. 276, distinguished.

In this case *held* that the foreign patent granted to Berliner for talking machines was not identical with certain claims included in his United States patent in suit and therefore his patent as to those claims did not expire with the foreign patent under § 4887, Rev. Stat.

A patent of the United States for an invention extends under § 4887, Rev. Stat., for the duration of the definite term for which a foreign patent may have been granted for the same invention, and does not expire by the forfeiture of such foreign patent or through the operation of a condition subsequent according to the foreign patent, such as the payment of fees during the life of the patent.

146 Fed. Rep. 534; 148 Fed. Rep. 1022, affirmed.

THIS case is here on certiorari to an interlocutory decree of injunction restraining the petitioner, Leeds & Catlin Company from manufacturing, using or selling sound reproducing apparatus or devices embodied in claim No. 35 of letters patent No. 534,543, issued to Emil Berliner, bearing date nineteenth of February, 1895, and also from manufacturing, using or selling or in any way disposing of apparatus or devices which embody the method specified in claim No. 5 of the same patent. These claims will be given hereafter.

The bill is in the usual form and alleges the issuing of the patent and the existence of the necessary conditions thereof

under the laws of the United States. It also alleges the transfer of title to the plaintiffs in the suit and the infringement of claims 5, 32 and 35 by the defendant, petitioner herein.

Petitioner answered, denying some of the allegations of the bill, and of others denying that it had knowledge or information sufficient to form a belief. Explicitly denied infringement, and alleged anticipation of the invention described in the patent by a great number of patents and publications in this country and other countries, an enumeration of which was made. And hence it is alleged that, in view of the state of the art, Berliner was not the first inventor or discoverer of any material or substantial part of the alleged improvement and invention described or claimed.

The answer further alleged that said letters patent did not describe or specify or claim any subject-matter patentable under the statutes of the United States, and are and always have been null and void. Abandonment is alleged and a two-years' use of the invention in this country before the application for the patent, that the invention and improvement were known and used by others and were in public use and on sale in this country by divers persons, a list of whose names is given.

It is alleged that before the invention was patented in the United States the same was patented, or caused to be patented, by Emil Berliner in foreign countries, and that by reason whereof, under § 4887 of the Revised Statutes of the United States, the letters patent in suit were limited to expire at the same time with said foreign patents and each of them. The numbers and dates of the foreign patents are given—two in Great Britain, three in France, three in Germany and one in Canada. They will be specifically referred to hereafter. And it is alleged that in consequence thereof the said letters patent of the United States have long since expired and plaintiff is not entitled to any relief by injunction or other relief in equity, that a court of equity has no jurisdiction of the suit, and that plaintiff has an adequate remedy at law. A replication was filed to the answer.

Upon the bill and certain supporting affidavits an order to show cause against a preliminary injunction was issued, which coming on to be heard upon such affidavits, and other affidavits and exhibits, a preliminary injunction was granted. 146 Fed. Rep. 534. It was affirmed by the Circuit Court of Appeals. 148 Fed. Rep. 1022.

*Mr. Louis Hicks* for petitioner:

Claims 5 and 35 of the patent in suit are void because they are claims for the functions of a machine. See dissenting opinion of Wallace, J., case below, 154 Fed. Rep. 61; *Westinghouse* v. *Boyden Co.*, 170 U. S. 537, 554; *Corning* v. *Burden*, 15 How. 252; *The Telephone Cases*, 126 U. S. 1, 531; *Risdon Locomotive Works* v. *Medart*, 158 U. S. 68, 78; *Hatch* v. *Moffitt*, 15 Fed. Rep. 252; *Cleveland Co.* v. *Detroit Co.*, 131 Fed. Rep. 740, 742; *Gage* v. *Kellogg*, 23 Fed. Rep. 891, 894; *Manhattan Co.* v. *Helios Co.*, 135 Fed. Rep. 785; *Tyden* v. *Ohio Co.*, 152 Fed. Rep. 183; *American Co.* v. *Steward*, 155 Fed. Rep. 731, 738; *American Co.* v. *Denning*, 160 Fed. Rep. 108.

Claims which describe the operation and effect of a machine have, without exception, been held invalid. *Busch* v. *Jones*, 184 U. S. 598, 607; *Risdon Locomotive Works* v. *Medart*, 158 U. S. 68, citing and approving *Mackay* v. *Jackman*, 12 Fed. Rep. 615; *Brainard* v. *Cramme*, 12 Fed. Rep. 621; *Gage* v. *Kellogg*, 23 Fed. Rep. 891; *Hatch* v. *Moffitt*, 15 Fed. Rep. 252; *Sickles* v. *Falls Co.*, 4 Blatch. 508; *Excelsior Co.* v. *Union Co.*, 32 Fed. Rep. 221; *Coupe* v. *Weatherhead*, 16 Fed. Rep. 673; aff'd 147 U. S. 322; *Stokes Co.* v. *Heller*, 96 Fed. Rep. 104; *Dodge Mfg. Co.* v. *Ohio Works*, 101 Fed. Rep. 584; *Dodge Mfg. Co.* v. *Collins*, 106 Fed. Rep. 935, 937; *Cleveland Co.* v. *Detroit Co.*, 131 Fed. Rep. 740, 742; *Travers* v. *Hammock Co.*, 78 Fed. Rep. 638; *Wells Glass Co.* v. *Henderson*, 67 Fed. Rep. 930, 935; *American Co.* v. *Elkhart Co.*, 84 Fed. Rep. 960; *Ginsdorff* v. *Deering*, 81 Fed. Rep. 952; *Dick Co.* v. *Henry*, 160 Fed. Rep. 690, 692.

Claim 35 of the patent in suit is void because it is indefinite

and meaningless and claims nothing. See *Merrill* v. *Yeomans*, 94 U. S. 568, 573; *Keystone Bridge Co.* v. *Phœnix Iron Co.*, 95 U. S. 274, 278; *Hardison* v. *Brinkman*, 156 Fed. Rep. 962, 967; *Cincinnati Co.* v. *American Co.*, 143 Fed. Rep. 322, 325.

Claims 5 and 35 of the patent in suit are void because anticipated by British patent No. 1644 of 1878 to Edison, and for lack of invention in view of the prior art. This defense is good and valid and should have been considered and decided on its merits by the courts below under the rule stated by this court in *Mast, Foos & Co.* v. *Stover Mfg. Co.*, 177 U. S. 485. See under this head: *McClain* v. *Ortmayer*, 141 U. S. 419, affirming 33 Fed. Rep. 284.

Claims 5 and 35 of the patent in suit are void because anticipated by United States patent No. 341,214 of May 4, 1886, to Bell and Tainter, or by British patent No. 6027 of May 4, 1886, to Johnson for the same Bell and Tainter invention, and for lack of invention in view of the prior art.

Claims 5 and 35 of the patent in suit are void because anticipated by Werner Suess, and for lack of invention in view of the prior art.

This defense rests upon the three following documents:

1. United States patent No. 427,279, of May 6, 1890, to Suess, assignor to Berliner.

2. Canadian patent No. 41,901 of February 11, 1893, applied for May 5, 1891, to Berliner, as assignee of Suess.

3. Berliner's lecture before the Franklin Institute of May 16, 1888, acknowledging Suess to be the inventor.

Berliner patent in suit No. 534,543, of February 19, 1895, was granted for an invention previously patented by Berliner in Germany, by Berliner German patent No. 53,622, of November 20, 1889. The term of the patent in suit, therefore, expired with the expiration of the term of the prior German patent on November 7, 1902, before this suit was begun. Revised Statutes, § 4887; *Bate Refrig. Co.* v. *Sulzberger*, 157 U. S. 1; *Société* v. *Electric Co.*, 97 Fed. Rep. 604, 605; *Siemens' Admr.* v. *Sellers*, 123 U. S. 276.

Revised Statutes, § 4887, fixing the single term of a home "patent granted for an invention" previously patented in a foreign country, is clear and unambiguous and must control the decision in this suit without change by judicial action "based upon some supposed policy of Congress." A patent cannot have a plurality of terms and expire in parcels. *Siemens* v. *Sellers*, 123 U. S. 276. And see also *Hadden* v. *Collector*, 5 Wall. 107, 111; *Scott* v. *Reid*, 10 Pet. 524, 527; *Karst* v. *Gane*, 136 N. Y. 316, 321; *People* v. *Woodruff*, 132 N. Y. 355, 364; *South Bay Co.* v. *Howey*, 190 N. Y. 240, 247.

Broadening or narrowing the claims of an American patent will not prevent the operation of the statute. 5 Federal Statutes Annotated, 470, and cases there cited.

The test of the question whether an American patent is granted for an invention previously patented in a foreign country, is whether an article made according to the description of the invention patented by the foreign patent would infringe the American patent, that is, any claim of the American patent. *Commercial Manufacturing Co.* v. *Fairbank Co.*, 135 U. S. 176.

In determining whether a home patent is granted for an invention previously patented in a foreign country, the precise question is whether any of the claims of the home patent include the invention or some substantive part of the invention shown by the prior foreign patent. If so, the home patent expires as to all its claims with the foreign patent since a "patent cannot expire in parcels." *Western Electric Co.* v. *Citizen's Tel. Co.*, 106 Fed. Rep. 215; *Thomson-Houston Co.* v. *McLean*, 153 Fed. Rep. 883. See *Electrical Accumulator Co.* v. *Brush Electric Co.*, 52 Fed. Rep. 130.

A patent cannot expire in part and survive in part. A generic claim, covering the specific form of a specific claim and other forms as well, must, under any construction of the statute, expire with the expiration of the specific claim. *Sawyer Spindle Co.* v. *Carpenter*, 133 Fed. Rep. 238; aff'd 143 Fed. Rep. 976; *Aquarama Co.* v. *Old Mill Co.*, 124 Fed. Rep. 229, and *Westinghouse Co.* v. *Stanley Co.*, 138 Fed. Rep. 123, distinguished.

Berliner patent in suit No. 534,543 of February 19, 1895, was granted for inventions previously patented by Berliner in France, by his French patent No. 207,090 of July 19, 1890. The term of the patent in suit, therefore, expired with the expiration of the term of the prior French patent on July 19, 1905, before the decree for injunction was entered.

The patent in suit and claims 5 and 35 thereof expired, before this suit was begun, with the expiration of the prior British, French and German patents of November 8, 1887, to Berliner for the so-called "Basic Invention" covered by said claims 5 and 35.

Berliner patent in suit No. 534,543 of February 19, 1895, expired February 11, 1899, before this suit was begun, with the expiration of the term of six years for which the prior Berliner-Suess Canadian patent No. 41,901, of February 11, 1893, was granted, and beyond which it was not prolonged. *Commercial Mfg. Co.* v. *Fairbank*, 135 U. S. 176. See also: *Bate* v. *Hammond*, 129 U. S. 151; *Gramme Electric Co.* v. *Arnoux*, 17 Fed. Rep. 838, 840.

Judge Townsend found that the Berliner-Suess Canadian patent "discloses and broadly claims the invention covered by the claims here in suit," and "that if this patent expired, as claimed in 1899, the patent in suit expired at the same time."

Assuming, as Judge Townsend found, that the Berliner-Suess Canadian patent "discloses and broadly claims the invention covered by the claims here in suit," the patent in suit expired on February 11, 1899, with the expiration of the six year term for which the Canadian patent was granted.

The invention of the Berliner-Suess Canadian patent was, under the statute and decided cases, patented and caused to be patented by Berliner, the patentee of the patent in suit.

Under the patent act of Canada, a Canadian patent "expires," within the meaning of § 4887 of the Revised Statutes, at the expiration of the term for which the fee to the Government has been paid, unless a further fee for a "further term" is paid.

The patent does not lapse and is not forfeited, but its term expires. The Berliner-Suess Canadian patent was granted for a term of six, and not of eighteen, years, since the granted term depends solely upon the provisions of the patent act.

Under the provisions of the patent act of Canada payment of a further fee for the prolongation of the patent for a further term is a condition precedent to the existence of a term beyond the original term of six years, and not a condition subsequent operating on non-performance to forfeit the unexpired portion of a term previously granted. See *Pohl v. Anchor Brewing Co.*, 134 U. S. 381, 386; *Davis v. Gray*, 16 Wall. 229; *Giddings v. Ins. Co.*, 102 U. S. 111.

*Mr. Horace Pettit* for respondents:

The validity of claims 5 and 35 have been sustained in all cases where these claims have been brought into question. *Victor Talking Machine Co. v. American Graphophone Co.*, 140 Fed. Rep. 860; same case on appeal, 145 Fed. Rep. 350; *Victor Talking Machine Co. v. Hoschke et al.*, 158 Fed. Rep. 309; *Victor Talking Machine Co. v. The Fair*, 118 Fed. Rep. 609; *S. C.*, 123 Fed. Rep. 424; also *Victor Talking Machine Co. v. Shaffer & Salm*, and *Victor Talking Machine Co. v. Douglas Phonograph Co.*, not yet reported.

*Siemens v. Sellers*, 123 U. S. 276, does not sustain petitioner's proposition that if a minor feature of the United States patent happens to be patented abroad before the United States patent separately and independently of the main feature of the United States patent, that the expiration of that patent forfeits the entire United States patent. Such a proposition is absolutely contrary to the intent of § 4887. See *Westinghouse v. Stanley Improvement Co.*, 138 Fed. Rep. 623. Under the decision in *Siemens v. Sellers*, the foreign patent, in order to come within the statute, § 4887, must contain the principal invention of the United States patent sought to be curtailed thereby. See also *United Nickle Co. v. California Electrical Works*, 25 Fed. Rep. 475, 479; *Gage v. Herring*, 107 U. S. 640, 646; *Leggett v. Standard*

*Oil Co.*, 149 U. S. 287, 293; *Carlton* v. *Bokee*, 17 Wall. 463, 472; *Russell* v. *Place*, 94 U. S. 606, 609; *Celluloid Mfg. Co.* v. *Zylonite Brush & Comb Co.*, 27 Fed. Rep. 291, 294.

In all the authorities, however, which have been considered where it was held that the prior foreign patent limited the domestic patent, the substantial invention of the United States patent had been patented in the prior foreign patent, or the invention of the foreign patent has been so nearly like the substantial invention of the United States patent as to render them practically one and the same.

Where they have not been substantially one and the same, the defense has failed. *Aquarama Co.* v. *Old Mill Co.*, 124 Fed. Rep. 333; *Welsbach Light Co.* v. *Rex Incandescent Co.*, 94 Fed. Rep. 1006; *Electric Accumulator Co.* v. *Brush Electric Co.*, 52 Fed. Rep. 130. See also *Westinghouse Electric Co.* v. *Stanley Instrument Co.*, 138 Fed. Rep. 823.

Is the principal invention of the domestic patent found in the foreign patent? Is the subject-matter of one the same in all essential particulars as that of the other? These were the main tests applied in *Siemens* v. *Sellers*, 123 U. S. 276. See also *Accumulator Co.* v. *Julien Electric Co.*, 57 Fed. Rep. 605.

If the principal invention of the subsequent United States patent is not described or claimed in the prior foreign patent, the principal invention cannot forfeit. *Westinghouse Electric Co.* v. *Stanley Instrument Co.*, 138 Fed. Rep. 823.

In construing § 4887 the period of the prior foreign patent to be taken into consideration with the domestic patent, is the longest possible term of the foreign patent; is the period of duration expressed in the grant; or in other words, the duration of the United States patent is fixed when the United States patent issues, by the longest possible term of the foreign patent, and shall not be subject to be terminated by the occurrence or non-occurrence of certain facts which would require extraneous proof. *Diamond Match Co.* v. *Adirondack Match Co.*, 65 Fed. Rep. 803; *Pohl* v. *Anchor Brewing Co.*, 134 U. S. 381; *Holmes Electric Protective Co.* v. *Metropolitan Burglar Alarm*

*Co.*, 21 Fed. Rep. 458; *Consolidated Roller Mill Co.* v. *Walker*, 43 Fed. Rep. 575.

MR. JUSTICE McKENNA, after making the foregoing statement, delivered the opinion of the court.

The motion for preliminary injunction was made upon affidavits. Those of respondent (complainant in the Circuit Court) described the invention and the machine made in accordance therewith, averred the practical identity of petitioner's machine therewith, and set forth the record in the case of *The Victor Machine Co. and The United States Gramophone Co.* v. *The American Graphophone Co.*, instituted in the Circuit Court for the Southern District of New York. The affidavits averred that the suit was pending and awaiting decision when this suit was brought, and was subsequently decided; that by the decision, claims 5 and 35 of the patent in suit were held valid and infringed by the talking machine of the defendants, and that an injunction was ordered. 140 Fed. Rep. 800. And it was stated that the Circuit Court of Appeals, though not concurring with the Circuit Court in all of its reasoning, affirmed the decree.

The affidavits of petitioner (the defendant in the courts below) set forth the defenses which were made in the case just referred to, a summary of the proofs introduced to sustain the defense, and submitted new matter. The affidavits also contained a description of the patent in suit and what was considered to be its basic invention, averred its identity with certain foreign patents which were not in evidence in the other suit. The affidavits also undertook to meet and refute the charge of infringement. The affidavits were very long and circumstantial, and had attached to them copies of the foreign and domestic patents relied on, translations of foreign laws, copies of publications and certain testimony. Such parts of these exhibits as we deem relevant will be referred to hereafter.

Upon this body of proof, formidable even in its quantity, and having no other elucidation than the arguments of counsel and

some mechanical exhibits, presenting grave questions of fact, we are asked by petitioner to go beyond the action of the lower courts, and not only reverse them as to a preliminary injunction but decide the case. If we should yield to this invocation and attempt a final decision it would be difficult to say whether it would be more unjust to petitioner or to respondent.

The Circuit Court felt a like embarrassment, as will be observed from its opinion. The court did not pass on the defense of infringement, and said that, except as to one patent, the petitioner had failed to introduce any new matter which would have led the courts in the other case, if such matter had been before them, to have reached a different conclusion. And, speaking of the patents referred to, the Circuit Judge said: "But even if I am mistaken in this view, and if the expiration of the Suess Canadian patent is a complete defense, or if a decision of the questions raised as to the character and scope of the various patents now introduced for the first time should be postponed until final hearing, yet I am constrained to grant the injunction in order to permit an appeal and a determination of the questions at the earliest possible moment."

And the lower courts also reserved to the merits the consideration of the defense that claims 5 and 35 were invalid because they were the functions of machines, resting those defenses, so far as the preliminary injunction was concerned, upon the adjudication in the prior suit. We shall do the same, remarking, however, that the contention, if it has any strength as to claim 5, seems to us untenable as to claim 35. We think the latter is a valid combination, consisting of the elements, (1) a traveling tablet having a sound record formed thereon; (2) a reproducing stylus, shaped for engagement with the record, and free to be vibrated and propelled by it. It is, therefore, a true mechanical device, producing by the coöperation of its constituents the result specified and in the manner specified.

In passing on the other foreign patents the Circuit Court considered that the prior adjudications fortified the presumption of the validity of the patent in suit, and established its scope,

and that the new matter introduced by petitioner did not repel the presumption or limit the extent of the patent. That the lower courts properly regarded the prior adjudications as a ground of preliminary injunction is established by the cases cited in Walker on Patents, § 665 *et seq.* See also Robinson on Patents, § 117 *et seq.* And in that aspect the question must be considered, and so considering it we may pass the defenses of anticipation, whether complete or partial, and the defense of infringement. These are, we have already said, questions of fact which we are not inclined to pass upon unaided by the judgments of the lower courts made after a hearing on the merits.

The patent in suit and the patents which, it is contended, anticipate it or limit its extent or duration are for methods or devices whereby sound undulations trace or inscribe themselves upon a solid material, and are by suitable devices made to reproduce themselves and the sounds which made them. One of the questions in the case is, as we have seen, the relation of the patent in suit to the prior art. It is contended by the respondent that Berliner (he was the patentee of the patent in suit), improved the prior art, not only in the methods of recording and reproducing sounds, but in the devices by which the methods are accomplished.

In the old method the sound record was produced by vertical vibrations, either indenting a pliable material, by and in accordance with the sound waves along a helical or spiral line, as in the Edison patents, or by like vibrations engraving a suitable material, by and in accordance with the sound waves, as in the Bell and Tainter patent. By both of these methods there was produced a record consisting of a groove of varying depth, that is, containing elevations and depressions corresponding to the sound waves which produced them. In the Berliner patents the vibrations are made to inscribe a laterally undulating line in the general direction of a spiral. The line, therefore, is of even depth, the inequalities or sinuosities produced by the sound waves being upon its sides. By this method there is pro-

duced a sound record tablet, consisting of a flat disc of hard resisting material, having in its surface inscribed a spiral groove of practically even depth, but undulating laterally in accordance with the sound waves. The patent in suit describes and specifies the ways of making such record tablet, as do the prior patents the sound records of the respective patentees. Further description of the records, however, is not necessary, as we shall have with them but incidental concern.

The records being made, the next step is the reproduction of the sounds which they record. This is done by adjusting to the line or groove inscribed upon the records a point or stylus attached to a diaphragm, which, being vibrated by the indentations or sinuosities of the groove, reproduces the sounds that made them. In the prior art the reproducing stylus and sound record were brought in operating relation to each other in two ways. The sound record was mechanically conveyed across the reproducing stylus, or the reproducer and its stylus were mechanically conveyed across the record. By one or the other of these means the stylus was kept in engagement with the record and accommodated to the shifting positions of its operative portions. In the patent in suit such independent means are dispensed with. The stylus is made to engage with the grooves in the record tablet, is vibrated laterally by its undulations, and guided or propelled at the same time with its diaphragm attachment across the face of the tablet, the successive portions of the groove reproducing the sound waves, which are transmitted to the air. The sound records are made of hard, indestructible material and, as stated in one of respondent's affidavits, the groove impressed therein "serves the twofold purpose of vibrating the stylus and producing the necessary vibrations in the diaphragm of the sound box, and also of automatically propelling the stylus in the groove across the surface of the record without a feed screw or other mechanism independent of the record itself." The method of doing that is the subject-matter of claim 5, and the means for performing the method is the subject-matter of claim 35. They are, respectively, as follows: "No. 5, the method

of reproducing sounds from a record of the same, which consists in vibrating a stylus and propelling the same along the record, substantially as described. No. 35 is a sound-producing apparatus, consisting of a traveling tablet having a sound record framed thereon and a reproducing stylus shaped for engagement with said record and free to be vibrated and propelled by the same, substantially as described."

We may now understandingly consider the new matter which was relied on in the courts below. The first in importance of these is that the patent in suit is for the same invention of certain foreign patents and expired with them. These patents consist of three French patents to Emil Berliner, respectively dated November 8, 1887, May 15, 1888, and July 19, 1890; German patents to Berliner dated November 8, 1887, May 16, 1888, and November 20, 1889; a Canadian patent of February 11, 1893, assigned by W. Suess to Berliner; English patents of November 8, 1887, and May 15, 1888. These patents are presented in an affidavit by the leading counsel for petitioner, accompanied by such comparisons of them with the patent in suit as established, it is contended, the identity of their inventions with its invention, and made applicable and controlling § 4887 of the Revised Statutes, which is as follows:

"SEC. 4887. No person shall be debarred from receiving a patent for his invention or discovery, nor shall any patent be declared invalid, by reason of its having been first patented or caused to be patented in a foreign country, unless the same has been introduced into public use in the United States for more than two years prior to the application. But every patent granted for an invention which has been previously patented in a foreign country shall be so limited as to expire at the same time with the foreign patent, or, if there be more than one, at the same time with the one having the shortest term, and in no case shall it be in force more than seventeen years."

The affidavits describe not only the reproducer of the patent in suit but also the recorder, and give details of the construction of both, and petitioner, in its briefs, elaborately traces

the development of Berliner's ideas in comparison with the prior art through three stages, each of which, it is contended "is represented by domestic and foreign patents, obtained or applied for, respectively, in 1887, 1888 and 1889–1892." Each stage, it is insisted, is claimed as an improvement upon the preceding stage, and all of them are but improvements upon the prior art. Berliner did not employ, it is said, any new principles in the reproduction of sound from a sound record, "the difference in the sound reproducing machines employed by him and those of the prior art consisting of modifications of details of construction." And it is further contended that an analysis of the patent in suit demonstrates "that the improvements described and claimed related first, to the recording of sound; and, second, to the reproducing of sound." It is impossible, counsel say, "to seriously contend that the essence of the improvements consist rather in the reproduction of sound than in the recording of sound." It is nevertheless argued that the lower courts so regarded the patent in suit, and by that error adjudged that the foreign patents did not embody Berliner's invention, and that, therefore, the patent in suit did not expire with them. Indeed, it is urged that "in the face" of the "expressed and positive declaration of the patentee as to what are the features of his invention, the courts below not only held that the patent included other features not enumerated by Berliner, but went even further, and held that the features which Berliner did enumerate as the features of his invention are not the principal features of his invention, but are mere minor details." This is a misapprehension of the view of the courts below. They confine themselves, as it was proper to do, to the claims in suit and to the invention exhibited in them, and in considering the relation of the patent in suit with foreign patents they distinguished between what the Circuit Court denominates the "broad and basic invention" covered by those claims and the "minor part" shown in the foreign patents. Petitioner attempts to make the recording and reproduction of sounds essential parts of one invention, of which the claims are

but parts. The purpose is to identify the invention of the patent with every one of the foreign patents and bring the case under what is conceived to be the doctrine of *Siemens* v. *Sellers,* 123 U. S. 276.

That case, it is contended, precludes a distinction between the claims of patent into basic and not basic, principal or subordinate, and establishes that all the claims of a home patent must be so limited as to expire with the expiration of a foreign patent, or if there be more than one prior foreign patent, with the expiration of the one having the shortest term. Upon the expiration of a patent, it is argued, all of its claims expire, since, as this court said in *Siemens* v. *Sellers,* as it is contended, "a patent cannot be considered as running partly to one date and partly to another, for this would be productive of endless confusion. In other words, a patent cannot expire in parcels, it cannot have a plurality of terms." Therefore it is contended that it is the patent, and not the separate claims thereof, which are by the statute limited to expire with the foreign patent. *Siemens* v. *Sellers* is cited for this doctrine, as we have said, and also the following cases: *Western Electric Co.* v. *Citizens' Telegraph Co.,* 106 Fed. Rep. 215; *Sawyer* v. *Spindle Co.,* 133 Fed. Rep. 238, affirmed in 143 Fed. Rep. 976; *Thomson & Houston Co.* v. *McLean,* 153 Fed. Rep. 883.

*Siemens* v. *Sellers* is especially relied upon, and whatever there is in the other cases that support the contention of petitioner is based on that case. In *Siemens* v. *Sellers* the patent passed upon was for an improved regenerator furnace, so called, and the question presented was whether it was identical with that described in an expired English patent. The court said (p. 283):

"We have carefully compared the two patents, the English and American, and can see no essential difference between them. They describe the same furnace in all essential particulars. The English specification is more detailed, and the drawings are more minute and full; but the same thing is described in both. There is only one claim in the English patent, it is true. But that claim, under the English patent system, entitled the

patentees to their entire invention, and is at least as broad and comprehensive as all four claims in the American patent."

It will be observed, therefore, that there was no distinction in the subject-matter of the claims. There was a difference in the number of the claims arising from the difference in the patent systems, but the claims were coextensive in substance and in invention. There was no question, therefore, of a difference in claims covering different inventions, but such contingency, it is contended, is embraced in the following passage (p. 283):

"It is contended by the counsel of the complainants that the American patent contains improvements which are not exhibited in the English patent. But if this were so, it would not help the complainants. The principal invention is in both; and if the American patent contains additional improvements, this fact cannot save the patent from the operation of the law which is invoked, if it is subject to that law at all. A patent cannot be exempt from the operation of the law by adding some new improvements to the invention; and cannot be construed as running partly from one date and partly from another. This would be productive of endless confusion."

This passage must be construed by what precedes it. It was said that there was no essential difference between the patents. "They described the same functions in all essential particulars." is the language used. "The principal invention," therefore, was "the same in both," and the improvements, which it was asserted the American patent contained, did not destroy its essence or its identity with the English patent, necessarily, therefore, did not save it "from the operation of the law." And the court meant no more than that. It was not said that a patentable improvement could not be made which could be secured by a patent which would endure beyond the expiration of a prior foreign patent for that which was improved. Such a ruling would contravene the right given by the statute. Section 4886 provides that "Any person who has invented or discovered any new and useful art, machine, manufacture, or composition of matter, or *any new and useful im-*

*provement thereof* . · .   .   may obtain a patent therefor." The improvement would be the invention and would endure for the period given to it by law.   Besides, a patent may embrace more than one invention. *Steinmetz* v. *Allen,* 192 U. S. 543. A process and an apparatus by which it is performed are distinct things.   They may be found in one patent; they may be made the subject of different patents.   So may other dependent and related inventions.   If patented separately a foreign patent for either would not affect the other.   Why would such effect follow if they are embraced in the same patent?   What policy of the law would be subserved by it?   The purpose of § 4887 of the Revised Statutes is very clear.   It is that whenever an invention is made free to the public of a foreign country it shall be free in this.   The statute has no other purpose.   It is not intended to confound rights and to make one invention free because another is made so.   This will even more distinctly appear in case of a patent for a combination, such as claim 35 is of the patent in suit.

A combination is a union of elements, which may be partly old and partly new, or wholly old or wholly new.   But whether new or old, the combination is a means—an invention—distinct from them.   They, if new, may be inventions and the proper subjects of patents, or they may be covered by claims in the same patent with the combination.

But whether put in the same patent with the combination or made the subjects of separate patents, they are not identical with the combination.   To become that they must be united under the same coöperative law.   Certainly, one element is not the combination nor in any proper sense can it be regarded as a substantive part of the invention represented by the combination, and it can make no difference whether the element was always free or becomes free by the expiration of a prior patent, foreign or domestic.   In making a combination an inventor has the whole field of mechanics to draw from.   This view is in accordance with the principles of the patent laws. It is in accordance with the policy of § 4887 of the Revised

Statutes, which is urged against it. That policy is, as we have seen, that an American patent is not precluded by a foreign patent for the same invention, but if a foreign patent be granted, an American patent is granted upon the condition that the "invention shall be free to the American people whenever, by reason of the expiration of the foreign patent, it becomes free to the people abroad." *Bate Refrigerating Co.* v. *Sulzberger,* 157 U. S. 1, 36. And all of the provisions of the statutes are accommodated. Each invention is given the full period of seventeen years, which the statute prescribes for it.[1] If limited at all, it can only be by a prior foreign patent identical with it. Nor can confusion result. Why should it? It does not result from analogous applications of the patent laws. Claims are independent inventions. One may be infringed, others not, and the redress of the patentee is limited to the injury he suffers, not by the abstract rights which have been granted him in other claims. One claim may be valid, all the rest invalid; invalid for the want of some essential patentable attribute. But what is good remains and is unaffected by its illegal associates. In such cases the patent does not stand or fall as a unity. If claims may be separable as in the case of infringement of some and not of others; if claims can be separable, though some are invalid, may they not be separable when some of them have expired? Certainly confusion cannot arise in one case more than in the other. Confusion might result in such circumstances as were presented in *Siemens* v. *Sellers,* where it was sought to extend the principal invention—indeed the only invention—by the date of a mere formal improvement of it. In such case, as

---

[1] Sec. 4884. Every patent shall contain a short title or description of the invention or discovery, correctly indicating its nature and design, and a grant to the patentee, his heirs or assigns, for the term of seventeen years, of the exclusive right to make, use, and vend the invention or discovery throughout the United States, and the Territories thereof, referring to the specification for the particulars thereof. A copy of the specification and drawings shall be annexed to the patent and be a part thereof.

it was said, the patent "cannot be construed as running partly from one date and partly from another."

In the light of these principles let us examine the foreign patents relied upon. Special stress is given to German patent No. 53,622 to Berliner, and it is contended that it expired before this suit was brought, and that the patent in suit expired with it. The patent refers to two others in which, it is said, there is described an apparatus for the recording of sound, and that "the present invention [that covered by the patent] relates to the instrument in the part of the apparatus performing the reproduction." The instrument is exhibited by a drawing and is specifically described. Petitioner says that that instrument covered the most important part of the Berliner gramophone, and that Berliner in his Franklin Institute lecture specifically stated that of the three principal features of the improvement of the patent in suit the *reproducer* formed one. But granting that he did say so, and that it is so, the inquiry yet remains, is it identical with the invention of claim 5, or claim 35 of the patent in suit? It is not of claim 5, for that is for a method, and a method is independent of the instruments employed to perform it. It is not of claim 35, for that claim is for a combination, and one element is not the combination. Indeed, all of the elements are not. To be that—to be identical with the invention of the combination—they must be united by the same operative law. Of course, an element is a part, an essential part of the combination, and enters as an operative agent in the performance of its functions. But this does not make it identical with the combination. It may be novel, patentable of itself, subject to its own special monopoly, or it may be free for everybody's use, but whether free or not free, free when the combination was formed (invented) or became free, it is not identical with the combination. It follows, therefore, that the expiration of the German patent No. 53,622 for the reproducer did not affect the duration of the patent in suit so far as claims 5 and 35 are concerned, even though such reproducer is made the subject of one of the claims of the patent in suit. To some

extent these remarks are applicable to all the foreign patents relied on by petitioner.

In the French patent No. 207,090, granted to Berliner, the claims cover a recorder as well as a reproducer of sound. They are practically the same instrument, and are denominated respectively in the patent as a recording sound box and as a reproducing sound box. As the first, to quote the patent, it is used to "trace acoustic curves upon the surface" of a sound record. As the second, that is as a reproducer, it reproduces the sounds which made the "acoustic curves."

It is contended by respondent that the recorder and reproducer of the patent in suit differ in certain details of construction and operation from the recorder and reproducer of the German and French patents, but the Circuit Court said that that question could only be determined by expert testimony, and assumed the details to be substantially identical. We shall do the same, and are of the opinion, for the reasons which we have given, that the expiration of those patents, the French patent as well as the German patent, did not carry with them the expiration of the inventions exhibited in claims 5 and 35 of the patent in suit.

It is further contended that the patent in suit expired with the British, French and German patents of November 8, 1887, to Berliner. These patents, it is contended, are for the "basic invention" covered by claims 5 and 35 of the patent in suit. The patents are identical, and therefore we consider only the British patent. The reasoning by which this is attempted to be supported is somewhat circuitous. Among the publications referred to in petitioner's answer and introduced in evidence was one in The Electrical World for November 12, 1887, one published in the same paper August 18, 1888, and a paper read by Berliner before the Franklin Institute May 16, 1888. In these publications there is description of the invention, and in the paper read before the Franklin Institute Berliner describes the genesis of his ideas and the ideas of others in the process of recording and reproducing sounds. He entered into a some-

what detailed description of his invention, exhibited a machine
and gave an illustration of its powers, among others letting the
audience "listen to some phonaulograms," which he said he
had prepared within two weeks before in Washington. This
was urged as a public use, but the Circuit Court decided that
neither that lecture and exhibition nor the description in The
Electrical World in 1887, constituted a public use within the
meaning of the statutes. And the court also decided that the
broad claims of the patent in suit were not made a part of the
earlier application for patent No. 564,586, and that that omis-
sion, even when combined with such exhibition and publication,
was not an abandonment and forfeiture of those claims. The
Circuit Court of Appeals did not discuss those questions or ex-
press an opinion upon them, but decided that the specifications
in the application for patent No. 564,586, issued subsequently
to the patent in suit, were broad enough to warrant the mak-
ing of the claims in controversy (5 and 35) and that the second
application could fairly be considered a continuation of the
first, and antedated the alleged public use. If this be so, pe-
titioner contends, the two patents must be treated as one patent
covering one invention, that described in No. 564,586, and,
it is further contended, that as that invention was previously
patented by the three foreign patents, the patent in suit expired
with them. The reasoning is extremely technical, and we may
adopt the answer made to it by the Circuit Court: "An ex-
amination of the drawings of the prior British patent shows
that there is omitted therefrom Figure 10 of the United States
patent No. 564,586, which was the only figure illustrating the
form of the device covered by the claims here in suit. There is
nothing either in the specifications or drawings of the said
British patent which describes, illustrates or shows the methods
or apparatus of the claims here in suit. These considerations
apply equally to said earlier German and French patents."

It would be a very strange application of § 4887 to hold that
it covers what is omitted from a foreign patent as well as what
is included in such patent. At any rate, whatever was the rul-

ing in the prior suit, in the suit at bar the Circuit Court and the Circuit Court of Appeals both held that the inventions of claims 5 and 35 of the patent in suit were not exhibited in the British patent, and that is so far a question of fact, pertains so much to evidence rather than to a construction of the patents, that we may well remit it, as we have other questions of the kind, to the merits of the case.

There yet remains the Suess-Canadian patent to be considered. It was granted to Berliner as the assignee of Suess, and Judge Townsend, in the Circuit Court, said that the patent disclosed and broadly claimed the invention covered by the claims in suit, and on account of it defendant (petitioner here) contended that Berliner thereby admitted that Suess was the inventor of the reproducing apparatus of those claims; that in his application as the assignee of Suess he abandoned the broad claim in suit, and that as the patent covered the invention of the patent in suit and expired in 1899, the patent in suit expired with it. The learned judge further said:

"The evidence introduced in the original suit showed and the court found on the Suess patent 427,279 that Suess was merely an improver of a particular form of swinging arm device, and some of the language used in the specifications of this Suess-Canadian patent, which, however, was not before the court in the original suit, seems to indicate that its structure is merely an improvement on the broad Berliner invention, and Berliner himself afterwards applied for and obtained a Canadian patent for the broad invention covered by the claims here in suit."

The court, however, decided that the Canadian patent in terms described and claimed "the broad generic invention of Berliner covered by the claims here in suit," and to establish this quoted claims 5, 7, and 11 [1] of the Canadian patent and concluded that if that patent expired in 1899 the patent in suit also expired. The court, however, decided, expressing, how-

---

[1] 5. In an apparatus for reproducing sounds from a record tablet, the combination with a reproducer mechanism consisting of a sound-conveying tube and a diaphragm and stylus mounted at one end of the tube;

ever, some hesitation, that the patent did not then expire, stating the rule to be, as established by the cases, that a United States patent is limited by the term expressed in the foreign patent and that it is not affected by any lapse or forfeiture of any portion of the term by means of any condition subsequent.

The patent was granted for the term of eighteen years from its date, February 11, 1893, but provides as follows:

"The partial fee required for the term of six years having been paid to the Commissioner of Patents, this patent shall cease at the end of six years from date, unless at or before the expiration of the said term the holder thereof pay the fee required for the further term or terms as provided by law."

And it appears that the fee for the second term of six years was not paid, and that because of such non-payment the patent expired February 11, 1899. The contention of petitioner is, as has been seen, that the patent in suit expired at the same date by virtue of § 4887, Revised Statutes. The necessary effect of that section, it is contended by petitioner, being that if by any act of omission of the patentee the invention becomes free in a foreign country it becomes free in this country. The contention of the respondent is that the domestic patent endures for the longest possible term of the foreign patent. In other words, endures for the period expressed in the grant, and is not dependent upon or "subject to be terminated by the occurrence or non-concurrence by certain facts which would require extraneous proof." These opposing contentions are discussed at great length by counsel and a number of cases are cited.

of a freely swinging supporting frame for the said producer mechanism, substantially as described.

7. In an apparatus for reproducing sounds from a record tablet, the combination with a reproducer mechanism consisting of a sound-conveyer, and a diaphragm and stylus mounted at one end thereof; of a supporting frame for the said reproducer, loosely pivoted to swing freely both laterally and vertically, substantially as described.

11. In an apparatus for reproducing sounds from a rotating record tablet, a reproducing stylus mounted to have a free movement over the surface of the record tablet, substantially as described.

We omit, however, the consideration of the cases and comment upon the arguments based upon them, as we think the questions involved are determined by *Pohl* v. *Anchor Brewing Co.*, 134 U. S. 381. It is there decided that "the statute manifestly assumes that the patent previously granted in a foreign country is one granted for a definite term; and its meaning is that the United States patent shall be so limited as to expire at the same time with such term of the foreign patent." And it is further said that the duration of the United States patent is not "limited by any lapsing or forfeiture of any portion of the term of such foreign patent by means of the operation of a condition subsequent, according to the foreign patent."

From these views it follows that there was no abuse of discretion in granting the preliminary injunction, and the decree is

*Affirmed.*