## PERMUTIT CO. v. WADHAM et al.

(Circuit Court of Appeals, Sixth Circuit. December 18, 1926.)

No. 4105.

**1. Patents ⬡⟿155—"Disclaimer" narrows claim, by confining it to what is new.**

Appropriate office of "disclaimer" is to narrow claim by confining it to what is new.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Disclaimer.]

**2. Patents ⬡⟿154—Disclaimer should be of specified means.**

In case of claim for means, generally, disclaimer should be of specified means.

**3. Quære—Foreign patents.**

Are German Gebrauchsmuster patents, under Rev. St. § 4920 (Comp. St. § 9466)—quære?

On application for rehearing. Rehearing denied.

For former opinion, see 13 F.(2d) 454.

Before DENISON, DONAHUE and KNAPPEN, Circuit Judges.

PER CURIAM. The application for rehearing presents some questions touched perhaps too summarily, if at all, by the opinion (13 F.[2d] 454), and deserving further discussion.

1. Claim 5 was held valid and infringed. It differs from claim 1 by calling for an additional element—a pipe connected to the lowest point in the casing for removing the salt solution. The identity of defendant's structure with this claim in this respect was testified to by plaintiff's expert, alleged in appellant's brief, and not questioned in appellee's brief, nor, as we remember, on the oral argument. Defendant now says that its salt solution comes in at the bottom, flows up, and leaves at the top; hence it does not infringe. It is true that this is the regenerative operation; but, when that is finished, the filter bed will be full of the salt solution, which must not remain. To drain it out through the pipe by which it had entered would seem the natural, if not the necessary, operation, and the claim would find full response in the structure.

2. Inventive advance by Gans over Leister was found to be because Leister had (or was not shown to have been without) a confining cover plate over his zeolite bed, thus preventing the essential boiling during backwashing. It is now urged that Gans showed, as an alternative form, one which, like Leister, had a confining cover, and that, since Gans by his broad claim must be deemed to have covered all his forms shown as equivalents, the claim would read upon Leister, and so be invalid. (L. Schreiber Co. v. Grimm [C. C. A. 6] 72 F. 671; Lumber Anti-Stain Co. v. Nester [C. C. A. 6], 178 F. 927.)

It may be doubted whether the rule of these cases should be applied to a rather casual reference to an alternative form so useless and so nearly inoperative as this would be (according to our judgment of Leister); but the basis of defendant's contention fails. The Gans specification says: "The respective layers of filtering material and zeolite may be contained within perforated or other similar removable casings, let into the filter casing, so that the removal of the filtering material and zeolites from the filter casing may be facilitated when such is at any time required." There is no drawing to interpret this description. The argument is that, because the zeolites are contained *within* a removable receptacle, therefore that receptacle is closed by a top cover (perforated). Not so. The school boy's lunch is contained *within* his dinner pail after he takes off the cover as well as before. If the removable casing is an open top cylinder with a perforated bottom, its contents are properly described as *within* it. We cannot surmise the existence of this unshown and undescribed cover, in order to defeat the patent.

[1, 2] 3. The claim was for a water-softening apparatus comprising, among other elements, "means for permitting the passage of water through the casing." The means shown and described therefor consisted of the inlet pipe *l* at the top, and the outlet pipe *j* at the bottom, and the water was said to pass downward through the filter beds. Since the claim was not as limited as the description, it could perhaps be rightly translated into terms of structure by making it call for "an inlet or outlet pipe at the top and an outlet or inlet pipe at the bottom." If that had been its form, and if it were later discovered that the bottom inlet top outlet form was old, and yet that there was patentable invention in reversing the flow (see opinion), there would have been no objection, as we think, to a disclaimer of so much of the claim as would extend to and include the bottom inlet and top outlet pipes. This would have narrowed the claim by confining it to what was new, the appropriate office of a disclaim-

er; and, with a claim for "means" generally, a disclaimer should be of specified means.

This is what plaintiff did, in effect. It disclaimed any apparatus in which the water "is so introduced into the casing that it passes upwardly"; that is, it disclaims any apparatus with the inlet at the bottom. Defendant now urges that the disclaimer transforms the mechanical patent into one for a downward flow process, and says that this cannot be done. Defendant deduces this transformation from the premise that one does not now infringe by making or selling the apparatus, but only by using it for one of the purposes of which it is capable. We cannot agree. There is no proof that the apparatus made and sold by defendants will work with a reversed flow, and we cannot assume it. The inlet pipe is at the top; the outlet, at the bottom. It is so shown in the manufacturer's catalogue. The parts are relatively located as required by the modified claim. To find infringement it is not necessary to think in terms of process.

[3] 4. It is true that in the case of Safety Co. v. Fischer (D. C.) 236 F. 955, 961, Judge Haight expressed the opinion that the Gebrauchsmuster were patents, but the decision went off in part on another line, and the affirmance ([C. C. A.] 247 F. 1005) did not specifically involve this question. It would seem that the words "patented in any foreign country" would have indicated to Senators and Representatives, familiar with the English and United States systems, inventions for which letters patent had been granted by some foreign government. With Gebrauchsmuster there is no official grant of anything. In effect they much resemble our copyrights; the "title" is "registered," and that is all; they are in the German system always distinguished from patents, as if something else. However that may be, the language of sections 4920 and 4887 (Comp. St. §§ 9466, 9431) is the same in this particular; both refer to the effect of a foreign patent; and the holding of the Leeds & Catlin Case, 213 U. S. 301, 29 S. Ct. 495, 53 L. Ed. 805, has the effect to interpret section 4920 as well as section 4887; nothing is patented, except what is claimed. Further, and in any event, the descriptions in these Gebrauchsmuster fall far short of that clear and definite disclosure of the precise invention now involved, which would be required, even if they were publications, to give them anticipatory effect.

The rehearing is denied.

The appellant, being plaintiff below, now makes a motion that the Wayne Pump & Tank Company should be placed upon the record as a party defendant and included among the appellees. This motion is accompanied by a showing that, pending the suit in the District Court, the Wayne Company succeeded to the assets and business of the Borromite Company, a named defendant, and thereafter conducted the defense in the court below and in this court. We are not inclined to act with regard to a change of interest which took place before the appeal.

The motion is denied, but the mandate will be without prejudice to the right of the District Court, in entering the new decree, to include the Wayne Company as a defendant, if that course shall seem proper to that court.